# In the United States Court of Federal Claims

No. 18-694C
(Filed: December 17, 2018)

```
*****************************************
ALLEGHENY TECHNOLOGIES          *
INCORPORATED,                   *
                                *
          Plaintiff,            *
                                *   RCFC 12(b)(1); Subject Matter Jurisdiction;
v.                              *   Tucker Act Preemption; 28 U.S.C. § 1631;
                                *   Judicial Transfer; Medicare Act
THE UNITED STATES,              *
                                *
          Defendant.            *
*****************************************
```

James E. Brown, Washington, DC, for plaintiff.

Antonia R. Soares, United States Department of Justice, Washington, DC, for defendant.

## OPINION AND ORDER

**SWEENEY**, Chief Judge

Plaintiff Allegheny Technologies Incorporated ("ATI") seeks to recover $726,650 plus interest and costs from defendant pursuant to Medicare's Retiree Drug Subsidy Program ("RDS program"). Specifically, plaintiff alleges that it submitted sufficient cost and pricing data to have "substantially complied" with applicable regulations, thereby entitling it to the subsidies offered under the program. Defendant moves to dismiss on the basis that this court lacks jurisdiction to hear such a claim. For the reasons set forth below, the court concludes that it lacks jurisdiction and orders that the above-captioned matter be transferred to the United States District Court for the Western District of Pennsylvania, unless the parties identify another appropriate United States district court to which this action should be transferred.

## I. BACKGROUND

### A. The RDS Program

The Medicare program was established in 1965 with the enactment of Title XVIII of the Social Security Act ("the Medicare Act"). See Social Security Amendments of 1965, Pub. L. No. 89-97, § 102, 79 Stat. 286, 291-332 (codified as amended at 42 U.S.C. §§ 1395-1395*lll* (2012)). The program provides medical insurance through the federal government to eligible beneficiaries. Id. In 2003, Congress amended the Medicare Act to add a prescription drug benefit ("Medicare Part D") administered by the Centers for Medicare and Medicaid Services

("CMS").  See Medicare Prescription, Drug, Improvement, and Modernization Act of 2003, Pub. L. No. 108-173, §§ 101-111, 900(a), 117 Stat. 2066, 2071-176, 2369 (codified as amended at 42 U.S.C. §§ 1395b-9(a), 1395w-101 to 1395w-154).  The component of Medicare Part D that provides subsidies to qualifying, employer-sponsored health plans through the RDS program is implemented in 42 C.F.R. §§ 423.880-.894.[1]  Health plans are considered "qualified" if they provide a prescription drug benefit that is at least equal to the actuarial value of the defined standard drug benefit under Medicare Part D, provide proper coverage notices to eligible individuals in the plan, and maintain proper records as defined by the CMS.  See 42 U.S.C. § 1395w-132(a)(2)(A); 42 C.F.R. § 423.884(a) (2011).  Plan sponsors must apply to the CMS to obtain subsidies offered by the RDS program.  42 C.F.R. §§ 423.884(c).  Plan sponsors may thereafter elect to receive advance payments, called "interim payments," subject to program requirements.  See Id. §§ 423.884, 423.888(b)(2)(ii).  To receive final payments, plan sponsors must submit cost documentation according to specific procedures promulgated by the CMS.  Id. § 423.888(b).  For plans that previously accepted interim payments, the CMS uses incurred cost data to determine whether additional payments should be made to a health plan or whether the government overpaid; in the latter situation, it must "claw back" some, or all, of the interim payments.  See id. § 423.888(b)(4)(ii); Def.'s Mot. App. 25.4.  Should a health plan sponsor fail to submit cost documentation by the established deadline, CMS procedures permit the agency to claw back all payments issued during that reporting period.  Def.'s Mot. App. 25.5.

The CMS administers the RDS program through an Internet website.[2]  Id. at 84-91 (providing a printout of https://www.rds.cms.hhs.gov as of August 13, 2018).  The website provides RDS program information and guidance for plan sponsors, including the "RDS User Guide," which describes the steps to initiate and complete the payment reconciliation process.  See id. at 4.  Plan sponsors are required to submit their cost documentation through the website by a firm deadline.  See id. at 88.  If a plan sponsor received interim payments and fails to complete the reconciliation process, "the sum of those payments will become overpayments and CMS will initiate immediate overpayment recovery action."  Id.

## B.  Facts

Plaintiff, headquartered in Pittsburgh, Pennsylvania, is a global manufacturer of advanced materials and components for the defense, oil and gas, medical, aerospace, and automotive industries.  Compl. ¶ 7.  Plaintiff sponsors the ATI Retiree Health Plan and the ATI TDY Retiree Health Plan, both of which are qualifying health benefits plans under the RDS program.  Id.  For

---

[1]  The RDS program does not fully reimburse claims, but provides a subsidy for specified drugs.  Although the authorized subsidy was originally 28%, sequestration reduced the RDS subsidy to 27.44% for April 2013 and thereafter.  Compl. ¶ 4; see Ctrs. for Medicare & Medicaid Servs., U.S. Dep't of HHS, Mandatory Payment Reduction in CMS' Retiree Drug Subsidy Reconciliation Payments (April 19, 2014), Centers for Medicare & Medicaid Services, https://www.rds.cms.hhs.gov/sites/default/files/webfiles/documents/mandatorypaymentreduction.pdf [https://perma.cc/8PLL-VAF2].

[2]  Ctrs. for Medicare & Medicaid Servs., U.S. Dep't of HHS, Retiree Drug Subsidy (RDS), https://www.rds.cms.hhs.gov [https://perma.cc/ZH2G-2DAL].

2015, plaintiff elected to receive an interim annual payment for its health plans and CMS, using cost estimates plaintiff provided, paid plaintiff $728,111.  Id. ¶ 11; see also Def.'s Mot. App. 59 (setting the figure at $728,110.81).  The 2015 plan year for plaintiff's benefits plans ended on December 31, 2015.  Compl. ¶ 8.  During the 2015 plan year, plaintiff's plans cumulatively provided prescription drug coverage for 1244 retirees, paying "gross covered retiree plan-related prescription drug costs"[3] in the amount of $4,058,827.  Id. ¶¶ 8-9.  Of these costs, plaintiff calculated that $2,648,141 were "allowable retiree costs" pursuant to 42 U.S.C. § 1395w-132(a)(3).  Id. ¶ 9.  Plaintiff claimed reimbursement for 27.44% of those costs, for a total of $726,650, as permitted by the RDS program.  Id.

CMS regulations require that plan sponsors submit reconciliation data within fifteen months following the end of the plan year.  42 C.F.R. § 423.888(b)(4)(i).  The deadline for plaintiff's plans was March 31, 2017.  Compl. ¶ 12.  Reconciliation is a twelve-step process, but plaintiff failed to complete all of the steps by the March 31, 2017 deadline.  Id. ¶¶ 13-15.  The employee responsible for submitting plaintiff's data made what plaintiff describes as an "inadvertent error," and did not complete the final step of the process—"Review and Submit Reconciliation Payment Request"— prior to the deadline.  Id. ¶ 15.  Plaintiff asserts that it did not learn of the error until April 3, 2017.  Id.  That day, the CMS sent an e-mail message to plaintiff, informing it that the CMS determined that the RDS program overpaid plaintiff the full amount of the interim payment.  Def.'s Mot. App. 65.  The CMS explained that it determined the full amount was an overpayment because the "[p]lan sponsor did not complete and submit a Reconciliation payment request for the above-referenced application by the application's Reconciliation deadline; therefore, all retiree drug subsidies received to date for this application are overpayments."  Id.  On June 1, 2017, the CMS offset the full amount of the interim payment against plaintiff's interim payment for its plans' 2016 plan years.  Compl. ¶ 16.

Upon discovering its error, plaintiff submitted a reconsideration request to the CMS.  Def.'s Mot. App. 67.  The CMS issued a written decision denying the request on April 20, 2017, determining that the "evidence and/or rationale provided by the Plan Sponsor were not sufficient to overturn" the CMS's decision.  Id. at 68.  Plaintiff requested an informal hearing to challenge this finding, and following that hearing, the CMS issued another written opinion, dated September 19, 2017.  Id. at 69, 72.  Therein, the hearing officer affirmed the decision to deny plaintiff's reconsideration request.  Id. at 74.  Plaintiff sought a review of the hearing officer's decision, and the CMS Principal Deputy Administrator issued a final decision affirming the hearing officer's decision on November 29, 2017.  Id. at 76-83.

### C.  Plaintiff's Complaint

Plaintiff filed a complaint in this court on May 16, 2018, alleging that it is entitled to $726,650 plus interest under the RDS program.  Compl. Prayer for Relief.  Plaintiff admits that it did not timely complete all twelve steps described in the RDS User Guide; however, plaintiff

---

[3] "Gross covered retiree plan-related prescription drug costs, or gross retiree costs, means those [Medicare] Part D drug costs incurred under a qualified retiree prescription drug plan, excluding administrative costs, but including dispensing fees, during the coverage year." 42 C.F.R. § 423.882.

argues that it nevertheless submitted the cost data necessary to satisfy 42 C.F.R. 423.888(b).  Id. ¶¶ 15-18.  Plaintiff asserts that the final step in the reconciliation process was unnecessary to comply with the substantive provisions of 42 C.F.R. 423.888(b).  Id. ¶¶ 18-19.  Specifically, plaintiff maintains that it was not seeking a "reconciliation," and that compliance with the text of the regulation requires the submission of cost data, rather than the submission of a reconciliation request.  Id. ¶¶ 19-20.  Plaintiff acknowledges that the CMS may determine what information plan sponsors must submit, and in what form and manner.  Id. ¶ 23.  However, plaintiff maintains that the CMS cannot create additional conditions beyond what the statute requires, such as a requirement for a final payment reconciliation.  Id.  Plaintiff also contends that it was not necessary to complete the final step of the reconciliation process because under the "substantial compliance doctrine, . . . less than perfect compliance with statutory or regulatory requirements is treated as full compliance where the essential purposes of the statute or regulations have been fulfilled."  Id. ¶¶ 25-26.  Because plaintiff transmitted to the CMS the information necessary to determine that plaintiff was eligible for its subsidy in the first eleven steps, and because "the essential purpose[] of [both] 42 U.S.C. § 1395w-115(d)(2)(A) and 42 C.F.R. § 423.888(b)(4)(i) [is] to ensure that CMS has sufficient data to determine whether a plan sponsor is entitled to a retiree drug subsidy," plaintiff asserts that it satisfied the "essential purposes" of those provisions and is therefore entitled to the subsidy.  Compl. ¶ 26.

### D.  Defendant's Motion to Dismiss

Defendant moves to dismiss plaintiff's complaint for lack of subject matter jurisdiction under Rule 12(b)(1) of the Rules of the United States Court of Federal Claims ("RCFC"). Defendant characterizes plaintiff's complaint as, in essence, a challenge to the CMS final decision that plaintiff was not eligible for an RDS program subsidy because it did not timely submit required reconciliation data.  Def.'s Mot. 13.  Defendant observes that such a claim arises under the Medicare Act, and asserts that judicial review of such claims must occur in the federal district courts pursuant to 42 U.S.C. § 405(g), which is incorporated into the Medicare Act by 42 U.S.C. § 1395ii.  Id. at 9-10, 13.  Defendant adds that if the Medicare Act does not provide for judicial review, judicial review is available, pursuant to 28 U.S.C. § 1331, which provides for federal question jurisdiction in the federal district courts.  Id. at 10 (referencing Shalala v. Ill. Council on Long Term Care, Inc., 529 U.S. 1, 10-13, 17-20 (2000)).  In short, defendant contends, because jurisdiction over claims arising under the Medicare Act lies within the federal district courts, the Tucker Act jurisdiction of this court is preempted and plaintiff's claim must be dismissed for lack of subject matter jurisdiction.  Id. at 13.

### E.  Plaintiff's Response

In its response to defendant's motion, plaintiff counters that the United States Court of Federal Claims ("Court of Federal Claims") has jurisdiction under the Tucker Act to entertain its complaint, which it characterizes as a "de novo claim under the Tucker Act for payment of an RDS program subsidy under 42 U.S.C. § 1395w-132."  Pl.'s Resp. 16.  Plaintiff first contends that "[Medicare] Part D is silent . . . on administrative and/or judicial review of claims" like its own, id. at 15; accord id. at 25 (asserting that Congress did not provide for administrative or judicial review of RDS program subsidy claims), and therefore "Tucker Act jurisdiction is not preempted," id. at 18.  Indeed, plaintiff asserts that the United States Supreme Court ("Supreme

Court") and the United States Court of Appeals for the Federal Circuit ("Federal Circuit") "have held that the Medicare Act does not preempt or bar a plaintiff's claim under a general grant of jurisdiction such as the Tucker Act in the rare situations like this one where the Medicare Act does not provide for review." Id. at 3. Moreover, plaintiff argues, Medicare Part D's silence regarding judicial review is not dispositive because eliminating judicial review requires a showing of "clear and convincing evidence" of "legislative intent" to do so, id. at 30 (quoting Abbott Labs. v. Gardner, 387 U.S. 136, 141 (1967), abrogated on other grounds by Califano v. Sanders, 430 U.S. 99, 104-05 (1977)), and such a showing cannot be made, id. at 32.

Similarly, plaintiff recognizes that 42 U.S.C. § 405(h) can preempt Tucker Act jurisdiction in certain circumstances, but maintains that the provision does not bar its suit because it only bars judicial review of claims—unlike its claim—for which the Medicare Act provides eventual judicial review. Id. at 32-34.

Finally, plaintiff contends that defendant's argument that the instant case could be brought in federal district court under 28 U.S.C. § 1331 is invalid because "any suit for judicial review filed by [plaintiff] in district court would rely for its waiver of sovereign immunity on the Administrative Procedure Act ("APA"), [which] is not available . . . because [plaintiff] has an adequate remedy under the Tucker Act." Id. at 3-4 (citing 5 U.S.C. § 704 (2012); Telecare Corp. v. Leavitt, 409 F.3d 1345, 1349 (Fed. Cir. 2005)).

## F.  Defendant's Reply

In its reply, defendant argues that by plaintiff not contesting that its claim arises from the Medicare Act, plaintiff's complaint should be dismissed "on that basis alone." Def.'s Reply 1. Defendant contends that 42 U.S.C. § 405(h), combined with 42 U.S.C. § 1395ii, precludes subject matter jurisdiction for actions arising under the Medicare Act "before any tribunal that is not specifically provided for in the Medicare Act." Id. at 2 (quoting St. Vincent's Med. Ctr. v. United States, 32 F.3d 548, 550 (Fed. Cir. 1994)). Defendant also highlights the Federal Circuit's holding that "if a claim arises under the Medicare Act, it may not be pursued in the Court of Federal Claims." Id. (quoting Wilson v. United States, 405 F.3d 1002, 1010 (Fed. Cir. 2005)). Defendant maintains that because plaintiff's "standing and substantive basis" in this action flows from the Medicare Act, the claim itself "arises from" that Act, and under Wilson, this court does not possess subject matter jurisdiction. Id. at 2 (quoting Heckler v. Ringer, 466 U.S. 602, 614-15 (1984)).

In addition, defendant asserts that the Medicare Act establishes "comprehensive administrative and district court review procedures" and, therefore, Tucker Act jurisdiction is preempted. Id. at 5 (quoting Pines Residential Treatment Ctr., Inc. v. United States, 444 F.3d 1379, 1380-81 (Fed. Cir. 2006)). In response to plaintiff's argument that Medicare Part D does not provide for judicial review, which would leave plaintiff without a forum for its claim, defendant relies on Bowen v. Michigan Academy of Family Physicians, 476 U.S. 667, 680 (1986), which held that 42 U.S.C. § 1395ii incorporated the judicial review scheme of 42 U.S.C. § 405(h) into the Medicare Act as a whole. Id. at 9. Defendant contends that plaintiff's claim, which involves Medicare Part D benefits, may therefore be brought only in a federal district court. Id. at 9-10.

The parties did not request oral argument, and the court deems it unnecessary.  The court is now prepared to rule on the motion.

## II.  STANDARD OF REVIEW

### A.  RCFC 12(b)(1) Motions to Dismiss

In ruling on a motion to dismiss a complaint pursuant to RCFC 12(b)(1), the court generally assumes that the allegations in the complaint are true and construes those allegations in the plaintiff's favor.  Trusted Integration, Inc. v. United States, 659 F.3d 1159, 1163 (Fed. Cir. 2011).  The allegations in the complaint must include "the facts essential to show jurisdiction." McNutt v. Gen. Motors Acceptance Corp., 298 U.S. 178, 189 (1936); see also Brazos Elec. Power Co-op., Inc. v. United States, 144 F.3d 784, 787 (Fed. Cir. 1998) ("Court of Federal Claims jurisdiction cannot be circumvented by such artful pleading and, accordingly, we customarily look to the substance of the pleadings rather than their form.").  If such jurisdictional facts are challenged in a motion to dismiss, the plaintiff "must support them by competent proof."  McNutt, 298 U.S. at 189; accord Land v. Dollar, 330 U.S. 731, 735 n.4 (1947) ("[W]hen a question of the District Court's jurisdiction is raised, . . . the court may inquire by affidavits or otherwise, into the facts as they exist.").  Ultimately, the plaintiff bears the burden of proving, by a preponderance of the evidence, that the court possesses subject matter jurisdiction.  Trusted Integration, 659 F.3d at 1163.  If the court finds that it lacks subject matter jurisdiction over an action, it must, pursuant to RCFC 12(h)(3), dismiss the complaint.

### B.  Subject Matter Jurisdiction

Whether the court has jurisdiction to decide the merits of a case is a threshold matter. See Steel Co. v. Citizens for a Better Env't, 523 U.S. 83, 94-95 (1998); Hymas v. United States, 810 F.3d 1312, 1316-17 (Fed. Cir. 2016).  "Without jurisdiction the court cannot proceed at all in any cause.  Jurisdiction is power to declare the law, and when it ceases to exist, the only function remaining to the court is that of announcing the fact and dismissing the cause."  Ex parte McCardle, 74 U.S. (7 Wall.) 506, 514 (1868).  Either party, or the court sua sponte, may challenge the court's subject matter jurisdiction at any time.  Arbaugh v. Y & H Corp., 546 U.S. 500, 506 (2006); Folden v. United States, 379 F.3d 1344, 1354 (Fed. Cir. 2004).

"The Court of Federal Claims is a court of limited jurisdiction."  Brown v. United States, 105 F.3d 621, 623 (Fed. Cir. 1997).  The Tucker Act confers on this court jurisdiction to adjudicate claims against the United States, not sounding in tort, that are founded upon the Constitution, a federal statute or regulation, or an express or implied contract with the United States.  28 U.S.C. § 1491(a)(1) (2012).  However, the Tucker Act is merely a jurisdictional statute and "does not create any substantive right enforceable against the United States for money damages."  United States v. Testan, 424 U.S. 392, 398 (1976).  Rather, "to come within the jurisdictional reach and the waiver of the Tucker Act, a plaintiff must identify a separate source of substantive law that creates the right to money damages."  Fisher v. United States, 402 F.3d 1167, 1172 (Fed. Cir. 2005) (en banc portion).  Plaintiffs relying on statutes or regulations for a cause of action must establish that the source of law "can fairly be interpreted as mandating

compensation by the Federal Government."  Testan, 424 U.S. at 401-02 (internal quotation marks omitted).

The Court of Federal Claims can be divested of its Tucker Act jurisdiction.  Indeed, "[c]ourts have consistently found preemption of Tucker Act jurisdiction where Congress has enacted a precisely drawn, comprehensive and detailed scheme of review in another forum . . . ." St. Vincent's, 32 F.3d at 550; accord United States v. Bormes, 568 U.S. 6, 13 (2012) (noting that "statutory schemes with their own remedial framework exclude alternative relief under the general terms of the Tucker Act"); United States v. Fausto, 484 U.S. 439, 454 (1988) (holding that a statute's "comprehensive and integrated review scheme" deprived the predecessor to the Court of Federal Claims, the United States Claims Court, of jurisdiction to review a claim arising under that statute).  In such circumstances, the Tucker Act is "displaced," and the "specific remedial scheme establishes the exclusive framework for the liability Congress created under the statute[, b]ecause a 'precisely drawn, detailed statute pre-empts more general remedies.'" Bormes, 568 U.S. at 12-13 (quoting Hinck v. United States, 550 U.S. 501, 506 (2007)).  "To determine whether a statutory scheme displaces Tucker Act jurisdiction, a court must 'examin[e] the purpose of the [statute], the entirety of its text, and the structure of review that it establishes.'" Horne v. Dep't of Agric., 569 U.S. 513, 527 (2013) (alterations in original) (quoting Fausto, 484 U.S. at 444).

### III.  DISCUSSION

The court is mindful that jurisdictional limits must be scrupulously observed.  See Owen Equip. & Erection Co. v. Kroger, 437 U.S. 365, 374 (1978) ("The limits upon federal jurisdiction, whether imposed by the Constitution or by Congress, must be neither disregarded nor evaded.").  Although the court need not, and does not, address the merits of plaintiff's claim to resolve the threshold jurisdictional issue, it must examine plaintiff's allegations to determine the statute from which plaintiff's claim arises.

### A.  Plaintiff's Allegations

The allegations set forth in the complaint make clear that plaintiff's claim arises from a dispute regarding an RDS program subsidy authorized in Medicare Part D.  Plaintiff contends that it is owed subsidy payments for 2015 because it provided prescription drug benefits to eligible Medicare beneficiaries as an approved plan sponsor pursuant to 42 U.S.C. § 1395w-132. Plaintiff asserts that although it did not complete all twelve steps of the procedure the CMS promulgated for reconciliation, it nevertheless substantially complied with the regulations and therefore should receive the RDS program subsidy.  Plaintiff challenges the CMS's finding that its interim payment to plaintiff was, in its entirety, an overpayment due to plaintiff's failure to complete all steps of the reconciliation process that the CMS established.  In short, plaintiff's claim arises from a dispute regarding whether benefits for health plan sponsors under Medicare Part D may be denied when a beneficiary complies with most, but not all, of the CMS's requirement for obtaining benefits.  Thus, the substantive basis for plaintiff's claim is the Medicare Act, specifically Medicare Part D, and the regulations and procedures promulgated to implement the Act.  Plaintiff's complaint identifies no statute other than the Medicare Act as the

substantive basis for an entitlement to relief.  Accordingly, the court must focus its jurisdictional analysis on Medicare Part D and its implementing regulations and procedures.

### B.  Judicial Review of Medicare Act Benefits Claims

The Supreme Court and the Federal Circuit have addressed the proper forum for Medicare Act claims.  Some claims involving, but not "arising under," Medicare are within the subject matter jurisdiction of this court.  One class of such claims includes those that arise from contracts to provide services to the government tangentially associated with Medicare; a "breach of contract claim for money damages against the government falls outside of the Medicare Act's remedial scheme."  Alvarado Hosp., LLC v. Price, 868 F.3d 983, 993 (Fed. Cir. 2017).  Cases similar to Alvarado involve claims for relief that do not involve benefits, but instead seek remedies arising from contract law, such as enforcement of settlements or a bargained-for benefit.  Id. at 994-95.

Another class of claims within the court's jurisdiction involves disputes in which third parties have no contractual or beneficial relationship with the Medicare program that would enable those parties to use the established review process.  See Telecare Corp., 409 F.3d at 1349 ("Because [the plaintiff] cannot invoke the specialized administrative and judicial review process . . . section 205(h) does not apply.").  The absence of such a connection enables Tucker Act jurisdiction to reach a claim otherwise preempted by the Medicare Act.  See id. at 1349-50 ("The availability of an action for money damages under the Tucker Act or Little Tucker Act is presumptively an 'adequate remedy' for [5 U.S.C.] § 704 purposes.  Because [the plaintiff] can bring an action under the Tucker Act or Little Tucker Act to redress the allegedly improper exaction, there is no waiver of sovereign immunity under the APA." (citations omitted)); see also Wilson, 405 F.3d at 1010 n.9 ("We do not suggest that the application of 42 U.S.C. § 405(h) precludes judicial review through other avenues in cases where the specialized administrative and judicial review processes provided in the statute are not available.")

The common, distinguishing feature of both of these types of claims is that they fall outside of the established judicial and administrative review process that applies to Medicare program beneficiaries.  Simply put, the plaintiffs in those cases were not Medicare program beneficiaries, and therefore their claims were not preempted by a review system designed for benefits claims.  Parties with such claims may therefore seek redress in the Court of Federal Claims because it has jurisdiction to entertain claims arising from contracts with the federal government and claims against the federal government based upon money-mandating statutes, such as the Medicare Act.  See Alvarado Hosp., 868 F.3d at 991 ("The Medicare Act is a non-contractual source of substantive law that mandates compensation to private parties by the Federal Government.").

In contrast, benefits claims "arising under" the Medicare Act are beyond the jurisdiction of the Court of Federal Claims.  Claims "arise under" the Medicare Act if the Act provides "'both the standing and the substantive basis for the presentation' of the claims."  Ringer, 466 U.S. at 615 (quoting Weinberger v. Salfi, 422 U.S. 749, 760-761 (1975)).  This test is broadly applied.  Id.; see also Wilson, 405 F.3d at 1012 ("In Heckler v. Ringer, the Supreme Court extended the holding of Salfi to the Medicare Act." (citation omitted)).  Other claims, including constitutional claims, if "inextricably intertwined" with the underlying claim for benefits, are

properly "channeled first into the administrative process which Congress has provided for the determination of claims for benefits." Wilson, 405 F.3d at 1012 (quoting Ringer, 466 U.S. at 614).

In Alvarado Hospital, the Federal Circuit held that a claim that purports to be a request for the review of an agency determination can nevertheless be considered a claim for benefits if the underlying purpose of the challenge is to obtain benefits. See 868 F.3d at 996 ("The ultimate question is whether the claim is a claim for reimbursement benefits. A claim that challenges a denial of reimbursement benefits, no matter how it is styled, is a claim for reimbursement benefits."(citation omitted)). The Federal Circuit further observed that the Supreme Court's interpretation of whether a claim "arises under" the Medicare Act is quite broad:

> The inquiry in determining whether the Medicare Act's review scheme bars jurisdiction over a claim is whether the claim at issue "arises under" the Act. The Supreme Court has construed the "claim arising under" language quite broadly to include any claims in which the Medicare Act provides both the standing and the substantive basis for the presentation of the claims. Under this broad test, the Court concluded that a claim arises under the Act when it is "at bottom, a claim that they should be paid for their" Medicare services.

Id. (citations omitted) (quoting Ringer, 466 U.S. at 614-15). Significantly, the Ninth Circuit had previously stated that "where, at bottom, a plaintiff is complaining about the denial of Medicare benefits—here, drug benefits under Part D—the claim 'arises under' the Medicare Act." Uhm v. Humana, Inc., 620 F.3d 1134, 1142-43 (9th Cir. 2010). The Federal Circuit relied on this language from Uhm, as well as the Supreme Court's Ringer decision, in Alvarado Hospital. See 868 F.3d at 1005-06. The court, in turn, finds it persuasive. In addition, binding precedent establishes that claims under Medicare Part A and Medicare Part B are not within the Court of Federal Claims' jurisdiction, but must instead be brought before a federal district court. See Wilson, 405 F.3d at 1012 (Part A); Shalala v. Ill. Council on Long Term Care, Inc., 529 U.S. 1, 16-17 (2000) (Part B).

Although no binding authority firmly establishes that claims arising specifically from Medicare Part D may not be brought in this court, the Supreme Court has established that 42 U.S.C. § 405(h) applies to the Medicare Act as a whole. Mich. Acad. of Family Physicians, 476 U.S. at 680 ("Section 405(h) does not apply on its own terms to Part B of the Medicare program, but is instead incorporated mutatis mutandis by [42 U.S.C.] § 1395ii."). Section 405(h) provides:

> The findings and decision of the Commissioner of Social Security after a hearing shall be binding upon all individuals who were parties to such hearing. No findings of fact or decision of the Commissioner of Social Security shall be reviewed by any person, tribunal, or governmental agency except as herein provided. No action against the United States, the Commissioner of Social Security, or any officer or employee thereof shall be brought under section 1331 or 1346 of Title 28 to recover on any claim arising under this subchapter.

42 U.S.C. § 405(h) (emphasis added). The Federal Circuit observed:

Judicial review of claims arising under the Medicare Act is pursuant to 42 U.S.C. § 405(g), which is made applicable to the Medicare Act by 42 U.S.C. § 1395ii and which provides, in relevant part, as follows:

> (g) Judicial review
>
> Any individual, after any final decision of the [Secretary] made after a hearing to which he was a party, irrespective of the amount in controversy, may obtain a review of such decision by a civil action commenced within sixty days after the mailing to him of notice of such decision or within such further time as the [Secretary] may allow. <u>Such action shall be brought in the district court of the United States for the judicial district in which the plaintiff resides, or has his principal place of business</u>, or, if he does not reside or have his principal place of business within any such judicial district, in the United States District Court for the District of Columbia.

<u>Wilson</u>, 405 F.3d at 1006-07 (alteration in original) (emphasis added) (footnote omitted) (quoting 42 U.S.C. § 405(g)). Section 405(g) thus confers authority to review Medicare benefits determinations on federal district courts, rather than on the Court of Federal Claims. <u>See id.</u> at 1012. By specifying the means of review, Congress displaced the Tucker Act with the "specific remedial scheme" established by 42 U.S.C. § 405(g)-(h). <u>See Brown v. GSA</u>, 425 U.S. 820, 834 (1976) ("[A] precisely drawn, detailed statute pre-empts more general remedies.").

### C. The Tucker Act Is Preempted by the Comprehensive Judicial Review Scheme of the Medicare Act

Claims for benefits under the Medicare Act are properly brought before a federal district court, not the Court of Federal Claims, and plaintiff's claim is a claim for benefits under the Medicare Act. Plaintiff attempts to avoid this conclusion by alleging that it is pursuing a "<u>de novo</u>" claim, and not a review of the CMS's final decision. <u>See</u> Pl.'s Resp. 16 ("The Government characterizes [plaintiff's] suit as one for review of [CMS's] final decision in its administrative review process. In fact, [plaintiff] brings a <u>de novo</u> claim under the Tucker Act for payment of an RDS subsidy under 42 U.S.C. § 1395w-132." (citation omitted)). The court rejects this styling. A careful consideration of the true basis of plaintiff's claim reveals that it arises from determinations of eligibility and compliance with Medicare statutes and regulations. <u>See Kaiser v. Blue Cross of Cal.</u>, 347 F.3d 1107, 1112 (9th Cir. 2003) ("[C]ourts have considered numerous cases that do not, on their face, appear to claim specific Medicare benefits or reimbursements yet have been found to arise under Medicare. One category of such cases are those cases that are '[c]leverly concealed claims for benefits.'" (second alteration in original) (quoting <u>United States v. Blue Cross & Blue Shield of Ala., Inc.</u>, 156 F.3d 1098, 1109 (11th Cir. 1998))). The relief sought is not based on a contract, nor is plaintiff unable to avail itself of the judicial review scheme provided in the statute. Plaintiff proffers a claim for benefits, and the decision of the agency is merely incident to plaintiff's objective, which is to receive the RDS

program subsidy.  See Pines Residential Treatment Ctr., Inc., 444 F.3d at 1381 (holding that a claim for Medicare reimbursement, even if styled as a different claim, is nonetheless a claim arising under Medicare if determining whether payment is due also requires resolving questions under the Medicare Act); see also id. ("[The plaintiff's] argument that the offset was improper because the government did not follow the applicable Medicare regulations in applying it only reinforces our conclusion by proving that resolution of this case requires an evaluation of the Medicare statutes and regulations.").  Moreover, to the degree that plaintiff presents a constitutional challenge to the CMS's procedures, resolution of that claim requires deciding whether the CMS has applied the Medicare Act permissibly, rendering the challenge inextricably intertwined with the underlying claim for benefits.

The court acknowledges plaintiff's concern that this case is a "rare situation[] . . . where the Medicare Act does not provide for review," Pl.'s Resp. 3, but finds this concern to be misplaced.  The Supreme Court has observed that it is a "heavy burden [to] overcom[e] the strong presumption that Congress did not mean to prohibit all judicial review of [a] decision." Mich. Acad. of Family Physicians, 476 U.S. at 672 (quoting Dunlop v. Bachowski, 421 U.S. 560, 567 (1975)).  "[O]nly upon a showing of 'clear and convincing evidence' of a contrary legislative intent should the courts restrict access to judicial review."  Id. at 671 (quoting Abbott Labs., 387 U.S. at 141).  Contrary to plaintiff's concern, the overwhelming weight of authority does not point to a lack of judicial review, but merely places such review elsewhere.

To the extent that plaintiff raises additional arguments that the Tucker Act is not preempted by the Medicare Act, the court finds them unpersuasive.  Ultimately, the jurisdictional defect is insurmountable:  plaintiff's alleged injury would be remedied through the payment of Medicare benefits, and the question of whether plaintiff is eligible for such a remedy requires a court to interpret the Medicare Act and its associated regulations and procedures.  Here, as in Alvarado Hospital, "at bottom, . . . plaintiff is complaining about the denial of Medicare benefits," 868 F.3d at 996 (quoting Uhm, 620 F.3d at 1142-43) (emphasis in original), and therefore plaintiff's claim arises under the Medicare Act.  Such a claim must be brought in federal district court.  See supra. Section III(B).

In sum, the court concludes that is does not possess subject matter jurisdiction over plaintiff's claim.  Its sole remaining duty is to determine whether this claim should be transferred to another forum in the interest of justice. [4]

### D.  Transfer

If a court determines that it lacks subject matter jurisdiction, the court should determine whether the case should be transferred to a court that possesses such jurisdiction.  United States

---

[4]  Transfer must occur prior to dismissal of a claim, because a transfer "is not proper when combined with a dismissal."  In re Teles AG Informationstechnologien, 747 F.3d 1357, 1360 (Fed. Cir. 2014) (quoting HollyAnne Corp. v. TFT, Inc., 199 F.3d 1304, 1307 (Fed. Cir. 1999)).  Once a court dismisses a case for lack of jurisdiction, it lacks the authority to transfer it to another court.  Id. at 1361 (citing Tootle v. Sec'y of the Navy, 446 F.3d 167, 173 (D.C. Cir. 2006)).

Tex. Peanut Farmers v. United States, 409 F.3d 1370, 1374-75 (Fed. Cir. 2005). "Federal courts possess certain 'inherent power,' not conferred by rule or statute, 'to manage their own affairs so as to achieve the orderly and expeditious disposition of cases.'" Level 3 Commc'ns, LLC v. United States, 724 F. App'x 931, 934 (Fed. Cir. 2018) (unpublished decision) (quoting Link v. Wabash R. Co., 370 U.S. 626, 630-31 (1962)). But those powers "must be exercised with restraint and discretion." Id. (quoting Chambers v. NASCO, Inc., 501 U.S. 32, 44 (1991)). Section 1631 of title 28 of the United States Code provides that a federal court may transfer an action to another federal court when (1) the transferring court lacks subject matter jurisdiction, (2) the action could have been brought in the transferee court at the time it was filed, and (3) such transfer is in the interest of justice. Accord Brown v. United States, 74 Fed. Cl. 546, 550 (2006).

As set forth above, the first requirement of 28 U.S.C. § 1631 is satisfied—the Court of Federal Claims lacks subject matter jurisdiction to entertain plaintiff's claim. With respect to the second requirement, the court has determined that jurisdiction over plaintiff's claim lies in federal district court pursuant to 42 U.S.C. § 405(g). Plaintiff's headquarters is located in Pittsburgh, Pennsylvania, and the court takes judicial notice, pursuant to Rule 201 of the Federal Rules of Evidence, that Pittsburgh is located within the jurisdictional boundaries of the United States District Court for the Western District of Pennsylvania. Because that court may exercise subject matter jurisdiction over plaintiff's claims, and venue would be proper there based on plaintiff's principal place of business, the court finds that this action could have been brought in the United States District Court for the Western District of Pennsylvania at the time it was filed in this court.

Turning to the third requirement of 28 U.S.C. § 1631—that the transfer be in the interest of justice—the court observes that plaintiff asserts a right to subsidies to which it would be entitled absent its failure to timely complete the required reconciliation process. While the court does not opine on the merits of plaintiff's claim, it does not find the claim's underpinnings frivolous, and thus deems it in the interest of justice to transfer the case to the United States District Court for the Western District of Pennsylvania.

## IV.  CONCLUSION

For the reasons stated above, the court concludes that it lacks subject matter jurisdiction to entertain plaintiff's claim for its 2015 RDS program subsidy, and that transfer to the United States District Court for the Western District of Pennsylvania is proper under 28 U.S.C. § 1631. By **no later than Friday, January 11, 2019**, the parties shall submit a joint status report indicating whether a different federal district court would be the proper transferee court. Upon receipt of the parties' status report, the court will effectuate the transfer.

**IT IS SO ORDERED.**

s/ Margaret M. Sweeney
MARGARET M. SWEENEY
Chief Judge